IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

SAI-E JOHARI,
  Plaintiff,

v.

Case No. 2:04-CV-679
JUDGE EDMUND A. SARGUS, JR.
Magistrate Judge Norah McCann King

FAITH MISSION, INC., et al.,
  Defendants.

**OPINION AND ORDER**

This matter is before the Court on the Defendants' Motion for Summary Judgment (Doc. #27) and the Defendants' Motion to Strike Plaintiff's Affidavit (Doc. #34). For the reasons that follow, the motions are granted.

**I.**

Plaintiff, Sai-E Johari ["Plaintiff"], brings this action pursuant to 42 U.S.C. § 1981 alleging that Defendants, Faith Mission, Inc., Nelson Meyer, Victor Ward, Intaker Yahseen[1], and Michelle Shields ["Defendants"], violated Plaintiff's rights under the First, Fourth and Fourteenth Amendments to the United States Constitution. Plaintiff also asserts a state law claim for emotional distress. Plaintiff is proceeding without the assistance of counsel. Plaintiff invokes this Court's jurisdiction pursuant to 28 U.S.C. §§ 1331, 1367.

---

[1] On March 30, 2005, the Magistrate Judge issued a *Report and Recommendation* dismissing Plaintiff's claims against "Intaker Yahseen." On April 28, 2005, the undersigned adopted and affirmed the recommendation of the Magistrate Judge and dismissed "Intaker Yahseen" from this case. (Doc. #25).

This action arises out of events which occurred during the Plaintiff's stay at the Faith Mission homeless shelter in Columbus, Ohio. Plaintiff sought refuge at the shelter after his apartment burned down in December 2003. (*Complaint* at 2). Upon arriving at the shelter, Plaintiff informed the staff that he "required a vegetarian diet, a smoke free living area, as well as a bottom bunk because plaintiff had a ruptured Achilles tendon." (*Id.*). Plaintiff also informed the staff that, in order for him to rest at night, he needed to listen to a low-volume radio. (*Id.*). According to Plaintiff, Defendant Yahseen characterized these requests as reasonable. (*Id.*).

Plaintiff was assigned a top bunk bed because no lower beds were available. (*Id.* at 3). Plaintiff was allegedly asked to sign a waiver of liability "releasing the Mission from any legal, physical or psychological harm plaintiff might suffer." (*Id.*). Plaintiff signed the waiver "but reserved the right to rescind it because plaintiff perceived it to be unconstitutional." (*Id.*). Plaintiff complained to Defendant Yahseen about the waiver and then filed grievances with Defendants Shields, Ward and Meyer[2]. (*Id.* at 4-5). Plaintiff claims, in Count One of his Complaint, that signing the waiver amounts to a violation of due process.

In Count Two, Plaintiff claims that he was denied equal protection because he was allegedly deprived of a vegetarian diet, a smoke-free living area, a bottom bunk bed, and the ability to listen to the radio while sleeping. (*Id.* at 6). According to Plaintiff, when a bottom bunk became available, Defendant Yahseen assigned it to a white male. (*Id.* at 7). Plaintiff alleges that when a second bottom bunk became available, in Plaintiff's room, Defendant Shields assigned it to another white male. (*Id.* at 8). According to Plaintiff, his new roommate was a

---

[2]Plaintiff identifies Defendant Nelson Meyer as the President of the Faith Mission, Defendant Victor Ward as the Vice President of the Faith Mission, and Defendant Michelle Shields as the Site Supervisor of the Faith Mission.

2

"chain-smoker," used an oxygen mask and snored loudly. (*Id.*). Plaintiff complained to Defendant Shields that because of the noise his roommate made, Plaintiff needed to use a radio to sleep. (*Id.* at 9-10). Plaintiff's request was initially declined by Shields but later approved after Plaintiff complained to Defendant Ward. (*Id.* at 11). When Plaintiff's roommate complained of the radio, Shields allegedly told Plaintiff that if he continued to play the radio he would have to leave the shelter. (*Id.*).

In Count Three, Plaintiff claims that he was deprived of due process and equal treatment because the Faith Mission allegedly permitted residents to smoke outside the entrance of the building and in restrooms. (*Id.* at 12-13). Plaintiff claims that he was "constantly forced to inhale deadly, secondhand smoke." (*Id.* at 14).

In Count Four, Plaintiff again claims that he was denied equal treatment and discriminated against by the Defendants' actions with respect to Plaintiff's use of a radio. (*Id.* at 16). In Count Five, Plaintiff claims that he was deprived of liberty and equal treatment by being banned from wearing sunglasses. (*Id.* at 18). According to Plaintiff, sunglasses were considered by the Faith Mission to be "gang paraphernalia." (*Id.*).

In Count Six, Plaintiff claims denial of liberty and due process by the Faith Mission's rule that residents make their beds. (*Id.* at 19). In Count Seven, Plaintiff claims denial of liberty and due process by the Defendants' alleged locking of emergency doors. Plaintiff claims that if there were a fire, he would have no escape route. (*Id.* at 20). In Count Eight, Plaintiff again claims that he is being injured by the denial of a vegetarian diet. (*Id.* at 21). Plaintiff also claims fraud and racketeering because the Faith Mission allegedly receives government funding and perpetrates a hostile environment on residents. (*Id.*). Finally, in Count Nine, Plaintiff claims that

Defendants are liable for intentional infliction of emotional distress because Plaintiff was subjected to noise of his roommate's snoring and oxygen machine. (*Id.* at 22).

The Defendants move for summary judgment on Plaintiff's claims. Plaintiff opposes the motion[3].

## II.

The procedure for considering whether summary judgment is appropriate, is found in Fed. R. Civ. P. 56(c); this section provides:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

The evidence must be viewed in the light most favorable to the nonmoving party. *Adickes v. Kress & Co.*, 398 U.S. 144, 158-59 (1970). Summary judgment will not lie if the dispute about a material fact is genuine; "that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is appropriate however, if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also*, *Matsushita Electronic Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986).

---

[3] In opposing the motion, Plaintiff has filed an affidavit. (Doc. #33). Defendants move to strike the affidavit on the basis that it is unsworn, not made under penalty of perjury, and merely repeats the allegations made in the complaint. Defendants' motion is well-taken. The affidavit fails to comport with the requirements of Fed. R. Civ. P. 56(e) and will be stricken from the record. The Court notes that the affidavit is of no material benefit in any event since it merely recites what is contained in the Complaint.

The United States Court of Appeals for the Sixth Circuit has recognized that *Liberty Lobby, Celotex,* and *Matsushita* have effected "a decided change in summary judgment practice," ushering in a "new era" in summary judgments. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1476 (6th Cir. 1989). The court in *Street* identifies a number of important principles in new era summary judgment practice. For example, complex cases and cases involving state of mind issues are not necessarily inappropriate for summary judgment. *Id.* at 1479.

In addition, in responding to a summary judgment motion, the nonmoving party "cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" *Id.* (quoting *Liberty Lobby*, 477 U.S. at 257). The nonmoving party must adduce more than a mere scintilla of evidence in order to overcome the summary judgment motion. *Id.* It is not sufficient for the nonmoving party to merely "'show that there is some metaphysical doubt as to the material facts.'" *Id.* (quoting *Matsushita*, 475 U.S. at 586). Moreover, "[t]he trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Id.* That is, the nonmoving party has an affirmative duty to direct the Court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact.

### III.

As stated *supra,* Plaintiff presents claims under 42 U.S.C. § 1981. The statute provides:

(a) Statement of equal rights
All persons within the jurisdiction of the United States shall have the same right
in every State and Territory to make and enforce contracts, to sue, be parties, give

5

> evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.
> (b) "Make and enforce contracts" defined
> For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.
> (c) Protection against impairment
> The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law.

42 U.S.C. § 1981.

A claim under § 1981 requires an allegation that Plaintiff was treated differently because of his race. *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 572 (6th Cir. 2000). In order to prove his claim, Plaintiff must show that (1) he is a member of a racial minority; (2) the Defendants intended to discriminate against him on the basis of race; and (3) the discrimination concerned one of the activities enumerated in § 1981. *Mayers v. Sedgwick Claims Management Services, Inc.*, No. 03-5708, 101 Fed. Appx.591, 592 (6th Cir. June 10, 2004).

As Defendants point out, Plaintiff fails to allege in the Complaint that he is a member of a racial minority. In his memorandum *contra*, Plaintiff argues that he was discriminated against because he "is Black." (Memorandum *contra* at 10). Since Plaintiff is proceeding *pro se*, the Court liberally construes the pleadings in this case. There is, however, no evidence to show racial discrimination in the making and enforcing of a private contract. While Plaintiff allegedly signed a waiver of liability upon receiving shelter at the Faith Mission, nothing in the record indicates that Plaintiff had a private contractual relationship with the Faith Mission[4]. In addition,

---

[4]Indeed, Plaintiff was under no obligation to remain at the Faith Mission; his residence there was wholly voluntary.

6

there is no evidence in the record to support Plaintiff's conclusory allegations that the various alleged deprivations he encountered during his stay at the Faith Mission were the product of racial discrimination. In sum, the Court finds that Defendants are entitled to summary judgment on Plaintiff's § 1981 race discrimination claim.

Plaintiff alleges purported claims for the deprivation of rights under the Fourteenth Amendment to the United States Constitution, presumably pursuant to 42 U.S.C. § 1983. A claim for relief under § 1983 requires a showing that the Plaintiff was deprived of a Constitutional right and the deprivation was committed under color of state law. *American Manufacturers Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999).

In moving for summary judgment, Defendants first argue that Plaintiff has failed to establish that they are state actors for purposes of § 1983. In his Complaint and Memorandum *contra*, Plaintiff speculates as to the extent of Defendants' receipt of government funding for the Faith Mission. Defendant Faith Mission characterizes itself as a non-profit organization that receives some funding from public sources.

For purposes of § 1983, state action is found where there is such a "close nexus between the State and the challenged action" that private actions "may be fairly treated as that of the State itself." *Brentwood Acad. v. Tennessee Secondary Sch.*, 531 U.S. 288, 295 (2001). The Sixth Circuit has recognized three tests for determining whether a private party has acted under color of state law: (1) the public function test; (2) the state compulsion test; and (3) the symbiotic relationship or nexus test. *Lansing v. City of Memphis*, 202 F.3d 821, 828 (6th Cir. 2000).

> The nexus test requires that a sufficiently close relationship exist between the state and the private actor (through regulation or by contract) so that private action may be attributable to the state. The public function test requires that the private

7

> actor exercise powers that are traditionally reserved to the state. And, the state compulsion test requires proof that the state significantly encouraged or coerced the private actor, either overtly or covertly, to take a particular action so that the choice is actually that of the state.

*Wittstock v. Mark A. Van Sile, Inc.*, 330 F.3d 899, 902 (6th Cir. 2003), citing *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982).

In this case, the record is insufficient to establish the satisfaction of any of the foregoing three tests for state action under § 1983. Plaintiff makes no attempt to show that the Defendants are state actors. Moreover, even if the Court were able to find that Defendants were state actors, the claims made by Plaintiff as to events during his stay at the Faith Mission fail to rise to the level of constitutional violations.

There is simply no evidence to support the assertion that Plaintiff had a property interest sufficient to trigger the protections of procedural due process. A property interest is "created and [its] dimensions are defined by existing rules or understandings that stem from an independent source such as state law - - rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972). As a voluntary resident of a homeless shelter, Plaintiff did not have an interest sufficient to trigger procedural due process.

In addition, there is no evidence to support the Plaintiff's conclusory assertions that Defendants' denial of a bottom bunk bed, a vegetarian diet, the use of a radio, the wearing of sunglasses and the policies on locking of doors and smoking, amount to discrimination against Plaintiff on account of his race. Nothing in the record indicates that any of the Defendants' actions and/or policies, assuming of course that Defendants could be considered state actors,

were prompted by "some racial, or perhaps otherwise class-based, invidiously discriminatory animus . . . ." *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971).

The Plaintiff also fails to come forward with any evidence to show how the Defendants' actions amount to racketeering. A civil claim under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961, *et seq.*, requires a showing of the following: (1) conduct, (2) of an enterprise, (3) through a pattern, (4) of racketeering activity, thereby causing injury to Plaintiff's business or property. *Sedima S.P.R.L. v. Imrex Co.*, 473 U.S. 479 (1985). There is a complete lack of evidence in this record to create an issue of fact as to any of these elements.

Finally, the Court finds no genuine issues of material fact on Plaintiff's claim for intentional infliction of emotional distress under Ohio law. Such a claim requires that Plaintiff show: (1) that the defendant either intended to cause Plaintiff emotional distress or knew or should have known that the actions taken would result in Plaintiff's emotional distress; (2) that the Defendant's conduct was so extreme and outrageous as to go beyond all possible bounds of decency ; (3) that the Defendant's actions were the proximate cause of Plaintiff's psychic injury; and (4) that the mental distress suffered by Plaintiff is serious and of such a nature that no reasonable person could be expected to endure it. *See Pyle v. Pyle*, 11 Ohio App.3d 31, 34 (Cuyahoga Co. 1983). Plaintiff's allegations that he suffered from intentional infliction of emotional distress are wholly conclusory and Plaintiff fails to create issues as to any of these elements.

For these reasons, the Court concludes that Defendants are entitled to summary judgment on all of Plaintiff's claims.

9

## IV.

For the foregoing reasons, the Defendants' Motion to Strike **(Doc. #34)** and the Defendants' Motion for Summary Judgment **(Doc. #27)** are **GRANTED**. The Clerk shall enter Judgment in favor of Defendants on Plaintiff's claims. This action is **DISMISSED**.

**IT IS SO ORDERED.**

10-14-2005
**DATE**

EDMUND A. SARGUS, JR.
UNITED STATES DISTRICT JUDGE